OPINION
{¶ 1} This is an appeal from a summary judgment ruling of the Court of Common Pleas of Tuscarawas County.
 STATEMENT OF THE FACTS AND CASE {¶ 2} Appellant was an employee at will in the accounting department of Appellee.
 {¶ 3} Appellant had access to her computerized time records and made certain alterations as to such.
 {¶ 4} She was terminated from employment on August 6, 2001.
 {¶ 5} Thereafter, Appellant filed her complaint, the second amendment of which asserts in Count One a violation of R.C. 4111.01 et seq. (Wage and Hour Statutes), violation of public policy in Count Two and defamation in Count Three and intentional inflection of emotional distress in Count Four.
 {¶ 6} After the court's ruling sustaining Appellee's Civil Rule 56 Motion, this appeal was timely filed.
 {¶ 7} Four Assignments of Error are raised, to-wit:
 ASSIGNMENTS OF ERROR {¶ 8} "I. THE TRIAL COURT ERRED BY FINDING PLAINTIFF DID NOT DEMONSTRATE A CLEAR PUBLIC POLICY VIOLATION IN HER TERMINATION.
 {¶ 9} "II. THE TRIAL COURT ERRED IN FINDING THAT NO QUESTIONS OF MATERIAL FACTG (sic) REMAINED AS TO PLAINTIFF'S DEFAMATION CLAIM.
 {¶ 10} "III. THE TRIAL COURT ERRED IN FINDING THAT ALLIED HAD A QUALIFIED PRIVILEDGE [SIC] TO INFORM PLAINTIFF'S CO-WORKERS OF THE REASONS FOR HER TERMINATION.
 {¶ 11} "IV. THE TRIAL COURT ERRED IN FINDING THAT NO REASONABLE MINDS COULD CONCLUDE THAT ALLIED'S (AND ITS AGENTS') BEHAVIOR TOWARD PLAINTIFF WAS NOT `OUTRAGEOUS'."
 {¶ 12} Of course, each of such Assignments of Error is based on the court's summary judgment ruling.
 {¶ 13} Civil Rule 56(C) states, in pertinent part:
 {¶ 14} "Summary Judgment shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence in the pending case, and written stipulations of fact, if any, timely filed in the action, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. . . . A summary judgment shall not be rendered unless it appears from such evidence or stipulation and only there from, that reasonable minds can come to but one conclusion and that conclusion is adverse to the party against whom the motion for summary judgment is made, such party being entitled to have the evidence or stipulation construed most strongly in his favor.
 {¶ 15} "Pursuant to the above rule, a trial court may not enter a summary judgment if it appears a material fact is genuinely disputed. The party moving for summary judgment bears the initial burden of informing the trial court of the basis for its motion and identifying those portions of the record that demonstrate the absence of a genuine issue of material fact. The moving party may not make a conclusory assertion that the non-moving party has no evidence to prove its case. The moving party must specifically point to some evidence which demonstrates the non-moving party cannot support its claim. If the moving party satisfies this requirement, the burden shifts to the non-moving party to set forth specific facts demonstrating there is a genuine issue of material fact for trial. Wing v. Anchor Media Ltd. of Texas (1991), 59 Ohio St.3d 108, citing Celotex v. Catrett (1986), 477 U.S. 317. Vahila v. Hall,77 Ohio St.3d 421, 429, 1997-Ohio-259, citing Dresher v. Burt,75 Ohio St.3d 280, 1996-Ohio-107. Summary judgment proceedings present the appellate court with the unique opportunity of reviewing the evidence in the same manner as the trial court. Smiddy v. The Wedding Party, Inc.
(1987), 30 Ohio St.3d 35, 36."
 I. {¶ 16} The First Assignment of Error questions the Court's failure to determine the existence of a public policy being contravened by Appellant's termination from employment.
 {¶ 17} It is not disputed that Appellant was an employee at will.
 {¶ 18} In general, under the employment-at-will doctrine, the employment relationship between employer and employee is terminable at the will of either party; thus, an employee is subject to discharge by an employer at any time, even without cause. See: Henkel v. EducationalResearch Council of Am. (1976), 45 Ohio St.2d 249, 255.
 {¶ 19} An exception to the right of termination was recognized in Kulch v. Structural Fibers, Inc. (1997), 78 Ohio St.3d 134, a case involving termination of a "whistle blower".
 {¶ 20} In such case the Court held:
 {¶ 21} "At-will employee who is discharged or disciplined for filing a complaint with Occupational Safety and Health Administration (OSHA) concerning matters of health and safety in the workplace is entitled to maintain a common-law tort action against the employer for wrongful discharge/discipline in violation of public policy, overrulingPhung v. Waste Management, Inc. 23 Ohio St.3d 100, 23 OBR 260,491 N.E.2d 1114. Occupational Safety and Health Act of 1970, § 2 et seq., 29 U.S.C.A. § 651 et seq.; R.C. §§ 3704.01 et seq., 3734.01
et seq., 4113.52.
 {¶ 22} "Elements of cause of action for tortious wrongful discharge in violation of public policy are that: clear public policy existed and was manifested in Constitution, statute or administrative regulation, or in the common law (clarity element); dismissing employees under such circumstances would jeopardize public policy (jeopardy element); plaintiff's dismissal was motivated by conduct related to the public policy (causation element); and employer lacked overriding legitimate business justification for dismissal (overriding justification element). (Per Douglas, J., with two Justices concurring and one Justice concurring in the judgment.)
 {¶ 23} "Clarity and jeopardy elements of tort of wrongful discharge in violation of public policy are questions or law to be determined by the court. (Per Douglas, J., with two Justices concurring and one Justice concurring in the judgment.)"
 {¶ 24} The Kulch case was followed by Greeley v. Miami ValleyMaintenance Contractors (1990), 49 Ohio St.3d 228, which stated:
 {¶ 25} "1. Public policy warrants an exception to the employment-at-will doctrine when an employee is discharged or disciplined for a reason which is prohibited by statute. (R.C. 3113.213[D], construed and applied.)
 {¶ 26} "2. Henceforth, the right of employers to terminate employment at will for `any cause' no longer includes the discharge of an employee where the discharge is in violation of a statute and thereby contravenes public policy. (Fawcett v. G.C. Murphy Co. (1976),46 Ohio St.2d 245, 75 O.O.2d 291, 348 N.E.2d 144, modified)."
 {¶ 27} This Court examined such decision in light of Tulloh v.Goodyear Atomic Corp. (1992), 62 Ohio St.3d 541 and Provens v. StarkCounty Board of Mental Retardation Developmental Disabilities (1992), 64 Ohio St.3d 252 in Cioca v. Village of Beach City, Ohio
(December 18, 1995), Stark App. No. 1995CA00124.
 {¶ 28} "In appellant's second assignment of error he contends that the trial court improperly granted summary judgment on his claim for wrongful discharge pursuant to the case of Greeley v. Miami ValleyMaintenance Contractors (1990), 49 Ohio St.3d 228. The Greeley case provided that the right of an employer to terminate employment at will for any cause no longer exists where the discharge is in violation of a statute and thereby contravenes public policy. Id. at paragraph two of the syllabus. If this occurs, an action for wrongful discharge in violation of public policy may be brought. Id. at paragraph three of the syllabus.
 {¶ 29} "The Court has limited its decision in Greeley in two later opinions: Tulloh v. Goodyear Atomic Corp. (1992), 62 Ohio St.3d 541 andProvens v. Stark County Board of Mental Retardation DevelopmentalDisabilities (1992), 64 Ohio St.3d 252. In the Provens decision, the Court stated that a cause of action in tort for wrongful discharge was created because the legislature could not have intended to leave an employee discharged in violation of a statute without an effective remedy. Provens at 261. The Ohio Supreme Court has therefore limited theGreeley decision to apply only in situations where a statute has been violated and no effective remedy exists."
 {¶ 30} Based upon the foregoing case law, we must consider whether a State or Federal statute was violated, creating an exception to the at-will employment.
 {¶ 31} Appellant argues that the Fair Labor Standards Act, 29 C.F.R. 785.11 requires that employees be paid for all time worked and that accurate records are required to be maintained by the employer and that a violation of either obligation would fall within the clear public policy exception.
 {¶ 32} The problems with this argument are that Appellant has not, on the one hand, provided anything as to non-payment of wages earned and secondly it is her assertion that she entered the computer to make sure that accuracy of her time was being established. She is not claiming that the employer failed in its obligation to keep accurate records, only that the records could have been slightly inaccurate if she had not made corrections, which a supervisor could have authorized.
 {¶ 33} We fail, therefore, to find a violation of the statutes referenced, or a public policy exception.
 {¶ 34} The First Assignment of Error is rejected.
 II. {¶ 35} The Second Assignment of Error questions the court's ruling as to a lack of disputed material facts as to the cause of action for defamation.
 {¶ 36} The apparent basis for this claim is that Appellant attended a meeting on August 6, 2001, with David Triplett, Director of Finance and Information Technology, Heather Kaiser, Accounting Supervisor, Penny Ackerman, payroll coordinator, Heather Glazer, Bill Morgan and Patti Diehl.
 {¶ 37} According to the Affidavit of Patti Diehl, David Triplett stated that Appellant had been dishonest.
 {¶ 38} Mr. Triplett in his deposition on Pages 107-109 states that he talked about honesty and that Appellant could not be trusted.
 {¶ 39} While unsworn statements purportedly from Appellant's deposition are attached in response to the Civil Rule 56 Motion, such deposition does not appear in the record.
 {¶ 40} The only material in the record from Appellant was her affidavit, which does not controvert any deposition material from Appellee.
 {¶ 41} As to such assertion, the Court ruled:
 {¶ 42} "Defamation is a false publication causing injury to a person's reputation or exposing him to public hatred, ridicule, shame or disgrace, or affecting the person adversely in the person's trade or business. Rogers V. Buckel (1992), 83 Ohio App.3d 653, 615 N.E.2d 669.
 {¶ 43} "Where statements are made concerning the activities of employees arising out of their employment, a qualified privilege is afforded statements concerning matters of common business interest. Evelyv. Carlson Co., Div. Of Indian Head, Inc. (1983), 4 Ohio St.3d 163,447 N.E.2d 1290. Proof of actual malice is essential to defeat a qualified privilege. AB-Abell Elevator Co., Inc. v. Columbus/CentralOhio Building Construction Trades Council (1995), 73 Ohio St.3d 1,651 N.E.2d 1283.
 {¶ 44} "Upon review of the file, the Court finds that there was no evidence presented to support that the Defendant David Triplett made any defamatory statements concerning the Plaintiff to her former-coworkers. The Court finds that the Defendant David Triplett, as the Plaintiff's supervisor, had a qualified privilege to inform the Accounting Department of the reasons for the Plaintiff's termination from Defendant Allied Machine. The Court finds that the Defendant David Triplett's statements were not made with actual malice. Instead, the Court finds there is evidence which supports that the Plaintiff had informed her former coworkers of the reasons for her termination."
 {¶ 45} Again, in examining the record, there is nothing in the way of an affidavit or deposition from Appellant that she did not change her time records, nor that the one lunch time was altered to show a return time in excess of that permitted.
 {¶ 46} Also, the deposition of David Triplett indicated that Appellant at first denied changing the records and later admitted such, though maintaining the changes were not for the purpose of cheating Appellee.
 {¶ 47} We must, as to the assignment, agree with the court that no actual malice has been shown and that the failure to respond to the excessive lunch time taken and false statements given denying changing the records fell within the purview of a qualified privilege as to matters of common business interest. Evely v. Carlson Co., Division ofIndian Head, Inc. (1983), 4 Ohio St.3d 163.
 {¶ 48} The Second Assignment of Error is, therefore, not well taken.
 III. {¶ 49} The basis of the Third Assignment has been discussed in our review of the Second Assignment and is rejected.
 IV. {¶ 50} The Fourth Assignment references intentional infliction of emotional distress.
 {¶ 51} In Yeager v. Local Union 20 (1983), 6 Ohio St.3d 369, the Ohio Supreme Court held that A[o]ne who by extreme and outrageous conduct intentionally or recklessly causes serious emotional distress to another is subject to liability for such emotional distress._ Id. at syllabus paragraph one. With respect to the requirement that the conduct alleged be extreme and outrageous, the Court explained:
 {¶ 52} "It has not been enough that the defendant has acted with an intent which is tortious or even criminal, or that he has intended to inflict emotional distress, or even that his conduct has been characterized by malice,= or a degree of aggravation which would entitle the plaintiff to punitive damages for another tort. Liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community."
 {¶ 53} Nothing has been offered with regard to outrageous conduct of Appellee warranting consideration of this claimed cause of action and it is also denied.
 {¶ 54} This cause is affirmed at Appellant's costs.
By: Boggins, J., Hoffman, P.J., and Wise, J., concur.